# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| JASPER LEE VICK, | ) | |
| # 139471, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:18-cv-00003 |
| | ) | CHIEF JUDGE CRENSHAW |
| v. | ) | |
| | ) | |
| CORE CIVIC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Jasper Lee Vick, an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee, brings this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Core Civic, Corrections Care of America (CCA), the Tennessee Department of Correction (TDOC), TDOC Commissioner Tony Parker, Core Civic Chief Executive Officer Damon Hinninger, SCCF nurse Westray, Trousdale Turner Correctional Facility (TTCC) food steward Compton, TTCC staff advisor K. Walton, TTCC Chief of Security Cox, TTCC TDOC Liaison Chris Brum, SCCF TDOC Liason Robert Cole Thurman, TTCC Administrative Warden Blair Liebach, SCCF Administrative Warden Cherry Lindamood, TTCC Assistant Warden J. Wardlow, TTCC Assistant Warden of Programs Yolanda Pittman, TTCC Chief of Unit Managers J. Veal, TTCC Unit Manager M. Dethrow, TTCC Inmate Relation Counsel V. Jenkins, TTCC Disciplinary Hearing Officer J. Garner, TTCC Case Manager B. Peterson, TTCC Unit Manager S. Payne, TTCC corrections officer V. McVay, TTCC corrections officer M. Otjens, TTCC corrections officer Cole, TTCC corrections officer Price, SCCF nurse Clenny, SCCF nurse Westray, SCCF Health Administrator J. Garner, SCCF nurse Heather Banks, SCCF corrections officer Daniel Harville, SCCF corrections officer

Brandy White, SCCF corrections officer James Bumphus, SCCF corrections officer Wesson, SCCF grievance coordinator Leigh Staggs, SCCF mailroom personnel Lineberry, SCCF corrections officer Sharvon Harris, SCCF nurse Brandi Keeton, SCCF Assistant Warden Danny Dodd, SCCF Assistant Warden of Security Scotty Peeler, SCCF nurse practitioner Kelley, SCCF Captain G. Keeton, SCCF Disciplinary Hearing Officer G. Gonzales, SCCF mailroom personnel H. Nava, and SCCF Disciplinary Hearing Officer B. Pevahouse, alleging violations of the Plaintiff's civil rights. (Doc. No. 1). The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I.      Three Strikes Analysis

The Prison Litigation Reform Act (PLRA) provides the following under § 1915(g) with respect to prisoner-plaintiffs:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In other words, a prisoner-plaintiff who falls within the scope of § 1915(g) because of three or more previous "strikes" must be pay the entire filing fee at the outset of the case, unless he or she is under imminent danger of serious physical injury. Wilson v. Yaklich, 148 F.3d 596, 603-04 (6th Cir. 1998), cert. denied, 525 U.S. 1139 (1999).

Vick is subject to the "three-strikes" provision under 28 U.S.C. § 1915(g) because he has, on at least three prior occasions, filed a civil action or an appeal that has been dismissed for failure

to state a claim upon which relief could be granted.[1]

To fall within the statutory exception to the "three-strikes" rule, a prisoner must allege that the threat or prison condition is "real and proximate" and that the danger of serious physical injury exists at the time the complaint is filed. See Rittner v. Kinder, 290 Fed. Appx. 796, 797-98 (6th Cir. 2008)(citation omitted). A prisoner's assertion that he faced danger in the past is insufficient to invoke the exception. Id. Therefore, pursuant to Section 1915(g) of the PLRA, the Plaintiff may pursue the instant action as a pauper only if he is under imminent danger of serious physical injury.

The complaint alleges that the Plaintiff, an inmate of TDOC, was housed at the TTCC from February 3, 2016, to May 22, 2017, and has been housed at SCCF since May 22, 2017. (Doc. No. 1 at 1). The Plaintiff suffers from insulin dependent, or Type 1, diabetes. (Id.) He explains that "a person with Type 1 diabetes must receive insulin from an outside source in order to survive." (Id. at 20). He continues:

> Insulin is typically administered through injections or use of an insulin pump . . . . Failure to administer insulin in a timely manner to a person with Type 1 diabetes can lead to diabetic ketoacidosis. DKA is a potentially fatal condition caused by severely elevated blood glucose levels. Similarly, failure to appropriately monitor blood glucose levels, or delayed access to food after insulin is administered, can lead to drastic drop in blood glucose levels resulting in the diabetic losing consciousness, or going into a coma or dying.

(Id. at 21).

The complaint alleges that, at both facilities, "due to understaffing and undertraining, reasonable accommodations for persons with insulin-dependent diabetes are either not available or

---

[1] See Vick v. Little, 07-1046-T/An (W.D. Tenn. 4/01/08)(Doc. No. 3 at 15-16)(dismissing Section 1983 action and noting that dismissal was the third dismissal of one of Vick's cases for failure to state a claim or as frivolous, thus making Vick a three striker going forward)(citing cases).

[are] routinely denied, and Constitutional rights or privileges are routinely hindered, impaired or denied the free exercise and enjoyment thereof." (Id. at 2). The complaint more specifically alleges that all persons with insulin dependent diabetes presently incarcerated at TTCC and SCCF lack access to basic diabetes care, including blood glucose checks and insulin administration coordinated with regular mealtimes and an appropriate diet. (Id. at 3, 20). For example, the complaint alleges that, upon the Plaintiff's arrival to TTCC, he was not seen by a doctor after his arrival for a period of nearly seven months. (Id. at 19). The complaint further alleges that corrections officers at times skip medications call for diabetics if the officers are too busy, which puts the diabetic inmates at risk for serious health complications. (Id. at 30).

Additionally, the complaint alleges that during periods of lockdowns and at other times of restricted movement, including August 29, 2016 through September 18, 2016 at TTCC, and on June 5, 2017, and July 21-19, 2017 at SCCF, inmates including the Plaintiff must rely on corrections staff to provide access to medical staff for diabetic care. (Id. at 26). During these periods, inmates are given meals in their cells, meals are provided at irregular times, and diabetic inmates are not allowed to check their glucose or receive insulin injections until after their meals; the complaint alleges that "[s]uch unconscionable delays in receiving basic diabetes care is the functional equivalent of receiving no care at all and is the direct result of Defendant CCA's policy or practice of understaffing and undertraining." (Id.) The complaint alleges that, as a result of being denied access to basic diabetes care, the Plaintiff has experienced numerous diabetes-related complications including degraded vision, diabetic neuropathy, kidney disfunction, heart palpitations, and heart disease. (Id. at 27, 54). The complaint also alleges that, due to the staffing levels and lack of training at both facilities, the delays in receiving basic diabetes care "has recurred several times,

with the high likelihood of recurrence in the future." (Id. at 26).

The imminent-danger exception is a pleading requirement subject to the ordinary principles of notice pleading. Vandiver v. Prison Health Servs., Inc., 727 F.3d 580, 585 (6th Cir. 2013). Under this standard, the plaintiff must "allege[ ] facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger at the time he filed his complaint." Id. (internal quotation marks and citation omitted). To support a finding of sufficiently imminent danger, "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." Id. (citing Rittner v. Kinder, 290 Fed.Appx. 796, 797 (6th Cir. 2008)). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." Id. (citations omitted). In an unpublished opinion, the Sixth Circuit has held that "[f]ailure to receive adequate treatment for potentially life-threatening illnesses . . . clearly constitutes 'imminent danger' under the [PLRA]." Vandiver v. Vasbinder, 416 Fed.Appx. 560, 562–63 (6th Cir. 2011) (citing Ibrahim v. District of Columbia, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (holding that "failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes 'imminent danger' ")). In a later, published opinion in a case filed by the same plaintiff, the Court reaffirmed that "a plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g)." Vandiver v. Prison Health Servs., Inc., 727 F.3d 580, 587 (6th Cir. 2013). Other circuits have similarly held that failure to treat "serious medical needs" may satisfy the imminent-danger requirement. See, e.g., Partin v. Harmon, 113 Fed.Appx. 717, 718 (8th Cir. 2004) (finding that plaintiff's allegations were sufficient to meet imminent-danger exception where he alleged that he was denied treatment for treatment for

tuberculosis, prostate cancer, and colon cancer, deprived of prosthetic support boots, denied medical

care for an injured knee and ankle, and forced to work against medical restrictions).

Some courts have rejected a requirement that the district courts scrutinize the seriousness of

the continuing injury before granting a three-striker leave to proceed in forma pauperis. For

example, in Ciarpaglini v. Saini, 352 F.3d 328 (7th Cir. 2003), the plaintiff alleged imminent danger

resulting from the defendants' wrongful discontinuation of his medication for attention deficit

hyperactivity disorder and panic disorder. The court rejected the defendant's assertion that the

plaintiff's claims were "not serious enough," stating:

> [Section] 1915(g) is not a vehicle for determining the merits of a
> claim. To follow the [defendant's] logic, a district court would not
> just need to determine whether a prisoner is alleging some type of
> ongoing or imminent harm. It would also need to fine-tune what is
> "serious enough" to qualify for the exception. Is being denied heart
> medication? What about a cholesterol-lowering drug? How
> frequently do beatings need to occur before they are serious? This
> would result in a complicated set of rules about what conditions are
> serious enough, all for a simple statutory provision governing when
> a prisoner must pay the filing fee for his claim. This is not required,
> and so we find that the district court erred in concluding that [the
> plaintiff's] complaint didn't meet the imminent danger exception.

Id. at 331. Accord Chavis v. Chappius, 618 F.3d 162, 169 (2d Cir. 2010) ("[A]lthough the feared

physical injury must be 'serious,' 'we should not make an overly detailed inquiry into whether the

allegations qualify for the exception,' because § 1915(g) 'concerns only a threshold procedural

question'. . . ." (quoting Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007))).

Upon carefully reviewing the complaint and attachments thereto, the Court finds that the

complaint adequately alleges facts supporting an inference that Plaintiff is in imminent danger of

serious physical injury due to the inconsistent or inadequate medical care provided to him for his

Type 1 diabetes at his current place of incarceration for purposes of the threshold inquiry required

by 28 U.S.C. § 1915(g).  See Vandiver v. Prison Health Srvs., 727 F.3d 580, 587-88 (6th Cir. 2013)(holding that prisoner alleged imminent danger of serious physical injury sufficient to satisfy exception to three strike rule where prisoner alleged that defendants continued to deny approved specialty care referral visits for prisoner's chronic illnesses of diabetes and Hepatitis C, he faced risk of coma or death resulting from the denial of physician prescribed special shoes, a transport vehicle, a special diet and medication, and already had undergone partial amputation of his feet).  Having satisfied the exception to the three strikes rule, and demonstrating that he lacks sufficient financial resources to pay the filing fee upon the filing of his complaint, the Plaintiff will be permitted to proceed in forma pauperis.

## II.      PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief.  Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B).  Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)."  Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III.    Analysis of Claims

### A.    ADA and Rehabilitation Act claims

The complaint alleges claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, et seq., against CCA and under Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act) against TDOC.

The ADA prohibits public entities from discriminating against a qualified individual with a disability on account of that disability in the operation of services, programs, or activities. 42 U.S.C. § 12131(1); Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). The ADA is applicable to state and local government entities, including prisons and county jail facilities. See Yeskey, 524 U.S. at 210 (holding that the term "public entity" includes prison facilities); Tucker v. Tenn., 539

F.3d 526, 529 (6th Cir. 2008). Title II's implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7).

To establish a prima facie case under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015). Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate § 12132. United States v. Ga., 546 U.S. 151, 160 (2006)(holding that Title II of the ADA validly abrogated state sovereign immunity insofar as it created a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment).

The proper defendant to a suit under Title II of the ADA is the public entity or an official acting his or her official capacity. Everson v. Leis, 556 F.3d 484, 501 n.7 (6ᵗʰ Cir. 2009). "Title II of the ADA does not, however, provide for suit against a public official in his individual capacity." Everson, 556 F.3d at 501 n.7; see also Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities. . . . We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities.").

Here, the complaint alleges that the Plaintiff is a qualified individual with a disability pursuant to the ADA and Rehabilitation Act, that he is qualified to receive Defendants' services, and

that Defendants "have intentionally with deliberate indifference discrimated [sic] against Plaintiff and limited, segregated, excluded, treated and classified Plaintiff in a way which adversely affects his opprotunities [sic] and denies him receipt of services and benefits of defendant entities because of his disability." (Doc. No. 1 at 28-29). The complaint further alleges that the Plaintiff requires accommodations to the Defendants' programs, services, and activities in order to manage his diabetes. (Id. at 28). According to the complaint, the Plaintiff sought reasonable accommodations, including access to blood glucose checks and insulin administration according to the schedule set by his physician, regular mealtimes, the opportunity to exercise, and access to medical treatment and equipment, and Defendants denied the Plaintiff's requests. (Id. at 28-29).

As a private entity, however, Defendant CCA cannot be liable for disability discrimination under Title II of the ADA. See Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010)("A private contractor does not . . . become liable under Title II merely by contracting with the State to provide governmental services, essential or otherwise."); Collazo v. Corr. Corp. of Am., No. 4:11CV1424, 2011 WL 6012425, at *3 (N.D. Ohio Nov. 30, 2011)("A private prison does not qualify as a department or agency of a state or local government and therefore is not a 'public entity' under the statute."); Lee v. Corr. Corp. of Am./Corr. Treatment Facility, 61 F. Supp. 3d 139, 143 (D.D.C. 2014)("As a private prison company, defendant is not covered by Title II of the ADA."); Goodman v. The Robert A. Deyton Det. Facility, No. 1:15-CV-1724, 2015 WL 5480046, at *4 (N.D. Ga. Sept. 15, 2015), appeal dismissed (Dec. 8, 2015) (dismissing inmate's ADA and Rehabilitation Act claims against federal detention center run by a private corporation). Accordingly, the Plaintiff cannot bring a claim against CCA under Title II, and the claim will be dismissed.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with

a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a claim under the Rehabilitation Act, a plaintiff must prove (1) that he is a "handicapped person" under the Act; (2) that he is "otherwise qualified"; (3) that he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his handicap; and (4) that the program or activity receives federal funds. Burns v. City of Columbus, 91 F.3d 836, 840–41 (6th Cir.1996) (citing Doherty v. S. Coll. of Optometry, 862 F.2d 570, 573 (6th Cir.1988)). If a plaintiff establishes a prima facie case under the Rehabilitation Act, the burden shifts to the defendant to show that the defendant's decision was reasonable under the circumstances. Id.

Generally speaking, because both the Rehabilitation Act and the ADA prohibit discrimination on the basis of disability, the jurisprudence regarding both statutory schemes has developed in tandem, and the claims are frequently considered as coextensive with each other. See, e.g., Thompson v. Williamson Cnty., 219 F.3d 555, 557 (6th Cir. 2000) (given the similarity between the ADA and the RA, claims brought under both statutes can be analyzed together); Andrews v. Ohio, 104 F.3d 803, 807 (6th Cir.1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other."). There are several important distinctions between the two statutes, however. First, Rehabilitation Act claims against the state are not barred by the Eleventh Amendment. Nihiser v. Ohio, 269 F.3d 626, 628 (6th Cir. 2001). And second, the "solely because of" language in the Rehabilitation Act imposes a higher burden of proof upon the plaintiff. Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 314-15 (6th Cir. 2012).

Here, the complaint alleges that TDOC, a recipient of federal funds for the operation of the state Department of Correction  (Doc. No. 1 at 5),   "intentionally with deliberate indifference discrimated [sic] against Plaintiff and limited, segregated, excluded, treated and classified Plaintiff in a way which adversely affects his opprotunities [sic] and denies him receipt of services and benefits of defendant entities because of his disability."  (Doc. No. 1 at 28-29).     The complaint does not, however, explain in what way TDOC has discriminated against the Plaintiff solely because of his diabetes; neither does the complaint identify what opportunities, services, and benefits TDOC is denying the Plaintiff because of his diabetes.    To the extent that the complaint alleges that diabetic inmates are placed in the SCCF Refuse Cell Assignment (RCA) pod where they are not provided the benefits of daily recreation, daily showers, jobs, and full commissary privileges, the complaint acknowledges that inmates other than diabetic inmates are placed in RCA pods, such as "inmates requesting PC and inmates who has [sic] obvious serious mental health needs and need immediate serious medical care and attention . . . ." (Doc. No. 1 at 51).  Thus, because non-diabetic inmates in the RCA pod are subject to the same limited benefits as diabetic inmates, the complaint fails to show that the Plaintiff and other diabetes inmates are denied these benefits solely because of their disability.

The complaint primarily focuses on TDOC's alleged failure to accommodate the Plaintiff's disability by providing access to blood glucose checks and insulin administration according to the schedule set by his physician, regular mealtimes, the opportunity to exercise, and access to medical treatment and equipment.  (Id. at 28-29).   Still, the Plaintiff has not sufficiently alleged that he was excluded from participation in a program or activity, or otherwise treated differently, because of his disability.  To be sure, the complaint does recite this second element, almost verbatim. (Doc. No.

1 at 28-29).  However, when it comes to alleging facts to support this legal conclusion, the Plaintiff

focuses on the Defendants' failure to provide "reasonable accommodations" for his disability.  Yet,

the requested accommodations by the Plaintiff are essentially requests for different or better medical

care for his diabetes.  As Judge Posner explained:

> [The ADA is] not . . . violated by a prison's simply failing to attend
> to the medical needs of its disabled prisoners. No discrimination is
> alleged; [plaintiff] was not treated worse because he was disabled.
> His complaint is that he was not given special accommodation....
> [H]e is not complaining of being excluded from some prison service,
> program, or activity, for example an exercise program that his
> paraplegia would prevent him from taking part in without some
> modification of the program. He is complaining about incompetent
> treatment of his paraplegia. The ADA does not create a remedy for
> medical malpractice.

Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).  Indeed, courts routinely dismiss ADA suits

by disabled inmates that allege inadequate medical treatment but do not allege that the inmate was

treated differently because of his or her disability.  See, e.g., Bonds v. Southern Health Parnters, Inc.,

No. 2:15-CV-209-WOB, 2016 WL 1394528, at *6 (E.D. Ky. Apr. 6, 2016)("[T]he ADA and

Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities

enjoyed by all, but these statutes do not provide a general federal cause of action to challenge the

sufficiency of the medical treatment of their underlying diabetes.");  Carrion v. Wilkinson, 309 F.

Supp.2d 1007, 1016 (N.D. Ohio 2004)("[Plaintiff] failed to allege that the defendants denied him

the benefits of any services, programs, or activities provided for other non-disabled inmates, or that

[the defendants] subjected him to discrimination because of his diabetes.  Instead, he claims that he

was denied a diabetic diet . . . [but this] is not the type of claim that the ADA . . . [was] intended to

cover." (internal quotation marks and brackets omitted); Galvin v. Cook, No. 00-CV-29, 2000 WL

1520231, at *6-7 (D. Or. Oct. 3, 2000)(dismissing ADA claim of diabetic inmate who alleged improper treatment of his diabetes but "failed to allege that the State defendants denied him the benefits of any services, programs, or activities provided for other non-disabled inmates, or that they subjected him to discrimination because of his diabetes" because the ADA "afford[s] disabled persons legal rights regarding access to programs and activities enjoyed by all, but do[es] not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities.").   Simply stated, the bare allegation of inadequate medical care, even when made by a person with a serious disability, does not state a claim under the Rehabilitation Act.  Put another way, the Plaintiff is claiming that he was not properly treated for his diabetes, not that he was mistreated because of his diabetes.  This claim falls squarely under the Eighth Amendment of the United States Constitution and will be addressed as such herein.  See Bonds, 2016 WL 1394528, at *8.   Accordingly,  the Court finds that the complaint fails to state an actionable claim against TDOC under the Rehabilitation Act.  The Plaintiff's claims under Rehabilitation Act will be dismissed.

**B.      Section 1983 Claims**

The Plaintiff also brings claims pursuant to 42 U.S.C. § 1983.    Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."  To state a claim under § 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law.  Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

### 1.    Failure to respond to inmate grievances claims

Some of the Plaintiff's Section 1983 claims are premised on a Defendant's response, or lack of response, to the Plaintiff's grievances. (Doc. No. 1 at 52-53).   However, a plaintiff cannot premise a Section 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place.  See Hewitt v. Helms, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  In short, because a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the Plaintiff's claims based on any Defendant's failure to respond to the Plaintiff's grievances do not state claims upon which relief can be granted.  All such claims will be dismissed.

### 2.    Medical needs claims

The complaint alleges that Defendants' failure to provide the Plaintiff with appropriate treatment and medication for his diabetes violated his constitutional rights.   The Eighth Amendment to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care.  See Grubbs v. Bradley, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982).  The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment.  See Bellamy v. Bradley, 729 F.2d 416, 419 (6th Cir. 1984).   The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976);

Brooks v. Celeste, 39 F.3d 125, 127 (6ᵗʰ Cir. 1994).

A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6ᵗʰ Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id.

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. Estelle, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. Id. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6ᵗʰ Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. See Thaddeus-X v. Blatter, 175 F.3d 378, 401 (6ᵗʰ Cir. 1999).

### a. CCA/Core Civic

Because it performs a traditional state function in operating a state prison, Core Civic[2] acts under the color of state law. Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996). However, unlike the state, Core Civic is not entitled to Eleventh Amendment immunity and may be

---

[2]The complaint names both Core Civic and CCA as Defendants, alleging that Core Civic previously did business as CCA. (Doc. No. 1 at 5).

liable under § 1983 "if its official policies or customs resulted in injury to the plaintiff." O'Brien v. Mich. Dep't of Corr., 592 Fed. Appx. 338, 341 (6th Cir. 2014); see also Mason v. Doe, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").  To hold Core Civic liable, the Plaintiff cannot rely on the theory of respondeat superior or vicarious liability.  Street, 102 F.3d at 818. Liability for failure to protect the Plaintiff attaches only if Core Civic's policies were shown to be the "moving force" behind the Plaintiff's injury.  City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989).

Here, the complaint alleges that Core Civic has a policy or practice of maintaining staffing levels insufficient to ensure that the Plaintiff and other diabetic inmates have access to basic diabetes care in coordination with regular mealtimes.  (Doc. No. 1 at 16).  According to the complaint, "[i]n order to maximize profits, CCA has a policy and practice of reducing staffing, sometimes even below levels called for in its contracts with entities such as the Tennessee Department of Corrections."  (Id. at 19).  For example, the complaint alleges that TTCC and SCCF do not have sufficient medical staff and do not have a nutritionist.  (Id. at 23, 25).   In addition, the complaint alleges that Defendant CCA has a policy of "undertraining"  its corrections officers with regard to the medical needs of diabetes inmates.  (Id.)  Meal times are irregular, and the "Plaintiff and other diabetic inmates [are] being forced to eat diabetic inappropriate meals without first being allowed to check blood glucose levels of take insulin, or being required to forego blood glucose checks or

insulin entirely." (Id. at 25).[3] The complaint alleges that these policies were created to maximize CCA's profits. (Id. at 19).

These policies, according to the complaint, are responsible in full or in part for the Plaintiff's injuries, including degraded vision, diabetic neuropathy, kidney disfunction, and heart issues. (Id. at 27, 54). At TTCC on October 16, 2017, for example, the Plaintiff was given insulin at 7:00 am and was not provided a food tray until 9:00 am. (Id. at 54). The Plaintiff began experiencing chest pain and was rushed to the SCCF emergency room for an EKG. (Id.) The Plaintiff experienced similar chest pains due to same reason ("not being provided a meal in coordination with insulin injections") on ten other dates in October 2017. (Id.)

Were the Plaintiff facing a motion to dismiss, his burden of proof would be much higher. He would need to show that CCA had one or more unconstitutional policies, that the policies were applied in the Plaintiff's case, and the policies were a "moving force" behind the denial of treatment or the inadequate treatment. See, e.g., Ezell v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:11–0405, 2012 WL 2601940, at *8 (M.D. Tenn. June 6, 2012) (report and recommendation), adopted, 2012 WL 2601936 (M.D.Tenn. July 5, 2012); Moffat v. Mich. Dep't of Corr., No. 09–14696, 2010 WL 3906115, at *9 n.11 (E.D. Mich. May 21, 2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), adopted, 2010 WL 3905354

---

[3]The complaint alleges that, on June 7, 2017, Defendant Clenny administered an insulin injection to the Plaintiff "without knowing whether the Plaintiff's blood glucose level was too high or too low . . . ." (Doc. No. 1 at 53). The Plaintiff expressed his concerns, and Clenny responded: "You are getting your tray and I don't give sliding scale during lockdowns." (Id.) On June 6, 2017, Defendant Kelley told the Plaintiff that SCCF does not give noon insulin. (Id.) On June 9, 2017, Defendant Westray repeated what Defendant Kelly had told the Plaintiff. (Id.) The Plaintiff asked, "What if I'm too low[?]" and Westray shrugged her shoulders. (Id.)

(E.D.Mich. Sept. 27, 2010); <u>Crawford v. Mich. Dep't of Corr.</u>, No. 2:09–cv–7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); <u>Broyles v. Corr. Med. Servs., Inc.</u>, No. 08–1638, 2009 WL 3154241 (6th Cir. Jan. 23, 2009) (inmate's "bare allegation of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief").   However, the Plaintiff is not facing a motion to dismiss at this time; the Court is conducting the required PLRA screening of the complaint, which is a lower burden for the Plaintiff to overcome in order for his claims to proceed.

The complaint alleges that the Plaintiff's diabetes constitutes a sufficiently "serious medical need" requiring medical treatment beyond what the Plaintiff has been afforded up to now.  The complaint goes further in alleging that Core Civic/CCA has engaged in an attempt to limit the medical treatment provided to the Plaintiff and other inmates for diabetes for purposes of cutting costs.  The Plaintiff alleges that he has suffered detrimental effects from Core Civic/CCA's refusal to treat his diabetes properly, including exacerbation of existing symptoms, kidney and heart issues, and the risk of a diabetic coma.

The Court finds that these allegations are sufficient to state Eighth Amendment claims based on the failure to provide appropriate medical treatment to the Plaintiff for his serious medical condition of diabetes pursuant to Core Civic/CCA policies prioritizing cost-savings over inmates' medical treatment.   Because the complaint alleges the existence of Core Civic/CCA policies and that the persons in charge of TTCC and SCCF were aware of and implemented these policies as applied to the Plaintiff, the Court will not dismiss Core Civic Chief Executive Officer Damon Hinniger, TTCC Warden Blair Liebach, SCCF Warden Cherry Lindamood, TTCC Assistant

Wardens Jerry Wardlow and Yolanda Pittman, or SCCF Assistant Wardens Danny Dodd and Scotty Peeler at this time with regard to these claims. Of course, the Plaintiff will bear the burden of supporting his allegations as to each Defendant with evidence as this case progresses. The Court simply finds that, for now, the Plaintiff's Eighth Amendment claims against Core Civic/CCA and these Defendants in their individual capacities survive the required screening under the PLRA.

### b. Non-entity Defendants

The Plaintiff names all non-entity Defendants in their individual and official capacities. An official capacity suit is, in all respects other than the name, to be treated as a suit against the entity. Cady v. Arenac Cnty., 574 F.3d 334, 342 (6th Cir. 2009). Thus, a suit against an employee of SCCF or TTCC is a suit against the state of Tennessee, the entity responsible for operating both facilities.

The Eleventh Amendment to the United States Constitution bars claims for damages against a state, its agencies, and its employees in their official capacities unless a state has a waived its immunity. Quern v. Jordan, 440 U.S. 332, 337 (1979), overruled on other grounds by Hafer v. Melo, 502 U.S. 21, 27 (1991); see Cowan v. Univ. of Louisville School of Medicine, 900 F.2d 936, 940 (6th Cir. 1990)("a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Tennessee has not waived its immunity. Berndt v. State of Tenn., 796 F.2d 879, 881 (6th Cir. 1986); Gross v. Univ. of Tenn., 620 F.2d 109, 110 (6th Cir. 1980). Therefore, the Plaintiff's Section 1983 claims for monetary damages against any individual Defendant in his or her official capacity are barred by the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 (1989). Thus, any such claims must be dismissed.

With respect to the Plaintiff's claims against the named non-entity Defendants in their

individual capacities, the Court assumes for purposes of the required PLRA screening that diabetes constitutes a sufficiently serious medical need. See Rouster, 749 F.3d at 446; Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005)(observing that the "objectively serious" requirement was met where a diabetic inmate whose medical condition required regular insulin injections failed to receive such treatment, and he was subsequently admitted to the hospital for emergency treatment and remained for several days).

As to SCCF nurse practitioner Kelley, the complaint alleges that she failed to properly treat the Plaintiff's diabetes; specifically, Kelley changed the Plaintiff's schedule of blood glucose checks and/or insulin intake from three times daily to two times daily and does not allow noon glucose checks or insulin. (Id. at 24). As to SCCF nurse Clenny, the complaint alleges that, on June 7, 2017, she injected the Plaintiff "without knowing whether Plaintiff's blood glucose level was too high or too low . . . and Plaintiff's plea for acute check and swab(s) was denied." (Id. at 53). The complaint alleges that these failures demonstrate Kelley and Clenny's "deliberate indifference of improperly administering insulin injections and refusing to follow doctor orders to provide all medications that is [sic] prescribed and ordered to control Plaintiff's diabetes." (Id. at 53). The complaint also alleges that SCCF Defendants Garner[4] and Westray knowingly or recklessly administered insulin in such a way that it was dangerous to the Plaintiff. (Id.)

As to TTCC Defendants Jenkins, Peterson, Payne, Garner, McVay, Price, Otjens, and Cole, the complaint alleges that, on March 16, 2017, they took the Plaintiff's "Keep On Person" (KOP) medication "that was prescribed by a physician or purchased by Plaintiff that is essential to keeping

---

[4]To clarify, the complaint names two individuals who have the same last name and first initial: J. Garner. These individuals work at different prisons and have different job titles. TTCC Defendant J. Garner is a disciplinary hearing officer. SCCF Defendant J. Garner is a health administrator. Both are named as Defendants to the Plaintiff's Eighth Amendment claims under Section 1983.

Plaintiff's diabetes under control to avoid future complications associated with not following physicians' orders . . . ." and refused to return the items until May 22, 2017. (Id. at 36-38). In addition, the complaint alleges that these Defendants took the Plaintiff's basic hygiene materials "which [are] also essential to keeping Plaintiff's diabetes and health under control to avoid future diabetes complications from not brushing teeth/dental care, showers, eye care products, foot care products and other prosthetic devices, issued by a physician or purchased by Plaintiff . . . ." (Id. at 37). The complaint alleges that these Defendants knew their actions posed a risk of harm to the Plaintiff's well-being because McVay told the Plaintiff that he had to "cover his ass" for not having returned the Plaintiff's medication to him, and Price told the Plaintiff that the officers "got to cover our ass about your property" and "yeah man, we got to do what we gotta do." (Id. at 38). The Plaintiff's KOP medication regimen had been ordered by a physician since September 2010. (Id.)

Also, the complaint alleges that SCCF Defendants Banks and White allow 30-50 diabetic inmates in the waiting room at any one time, an area that has capacity for only 15 people. (Id. at 44). Diabetic inmates must wait in the overcrowded waiting room for periods of 1.5 to 2.5 hours for a thirty second insulin injection twice daily. (Id. at 45). The complaint alleges that, on August 20, 2017, Defendants Banks and White threatened diabetic inmates with segregation if they did not sign a Refusal of Medical Services form and leave before receiving their insulin. (Id. at 41). Banks blamed the long waits on the security personnel and told the Plaintiff that she was going to recommend that inmates who sign more than three refusals be taken off their medication and insulin. (Id. at 45).

Prison medical personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or lack thereof or by "interfer[ing] with treatment

once prescribed." <u>Estelle</u>, 429 U.S. at 104-05; <u>see also Berryman v. Rieger</u>, 150 F.3d 561, 566 (6th Cir. 1998)(quoting <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1154-55 (6th Cir. 1991)(a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available.")). Although in some instances prison non-medical staff have no role in the medical treatment provided to inmates, here, the complaint alleges that TTCC Defendants Jenkins, Peterson, Payne, Garner, McVay, Price, Otjens, and Cole and SCCF Defendants Garner, Westray, Banks, and White acts interfered with the Plaintiff's medical treatment in some way to the Plaintiff's detriment and, in doing so, these Defendants knew of and disregarded an excessive risk to the Plaintiff's health. <u>Cf. Carson v. Hamblen Cnty.</u>, No. 2:15-cv-337, 2017 WL 3038135, at *5, 9 (E.D. Tenn. July 17, 2017)(dismissing inmate's Section 1983 claim, finding plaintiff had presented no evidence that defendants played any role in the medical care provided to diabetic inmate or knew of and disregard an excessive risk to inmate's health or safety).

Further, the complaint alleges that these Defendants acted with deliberate indifference in applying Core Civic's cost saving policy to the Plaintiff and effectively depriving him of needed diabetic care. The Court finds that the complaint's allegations, "if true, [c]ould show that the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." <u>Rouster</u>, 749 F.3d 437, 446. These allegations support actionable Section 1983 claims upon which relief can be granted as to SCCF Defendants Kelley, Garner, Clenny, Westray, Banks, and White and TTCC Defendants Jenkins, Peterson, Garner, Payne, McVay, Price, Otjens, and Cole in their individual capacities. The Plaintiff's Eighth Amendment claims against these Defendants will be allowed to proceed for further development alongside the Plaintiff's policy-based claims against Core Civic.

However, the complaint fails to state a colorable claim against the remaining Defendants in their individual capacities, as the complaint does not assert that these Defendants were personally involved in the denial of adequate medical care to the Plaintiff. Many of the Defendants appear to have some supervisory authority. However, "[b]ecause § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." Miller v. Calhoun Cnty., 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.1984).

Here, the complaint does not allege that any of the remaining Defendants were directly responsible for the medical treatment experienced by the Plaintiff, nor can any such claims be liberally construed against these Defendants. Neither does the complaint allege that these Defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" party. Bellamy, 729 F.2d at 421. As to some of the Defendants, the complaint alleges he or she was or should have been aware of the Plaintiff's complaints about his treatment but failed to act. In the Sixth Circuit, however, officials whose only involvement in allegedly unconstitutional behavior is to deny or ignore grievances and to fail to remedy the allegedly unconstitutional behavior generally cannot be held liable under § 1983. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act.")(citation and internal quotation marks omitted)). Consequently, the complaint fails to state § 1983 claims upon which relief can be granted against Defendants Compton, Walton, Cox, Brum, Thurman, Veal, Dethrow,

Bumphus, Wesson, Staggs, Harris, and Nava.

### c.    TDOC

Next, the complaint names TDOC as a Defendant, seeking monetary relief. However, TDOC is not a "person" for purposes of Section 1983 liability. <u>See Mumford v. Basinki</u>, 105 F.3d 264, 267 (6th Cir. 1997). Instead, TDOC is an agency of the State of Tennessee and, as such, is entitled to Eleventh Amendment immunity. <u>Id.</u> The Plaintiff's claims against TDOC for monetary damages therefore must be dismissed. The Plaintiff's claims against TDOC for injunctive and prospective relief remain and will be handled upon referral to the Magistrate Judge. (<u>See, e.g.</u>, Doc. No. 1 at 57).

### d.    Tony Parker, TDOC Commissioner

As to Defendant Parker, Commissioner of the Tennessee Department of Correction, the complaint alleges that Parker is "head" of TDOC, TTCC, and SCCF. (Doc. No 1 at 6). However, actions brought against state actors such as Parker cannot be maintained under Section 1983 on a theory of respondeat superior, <u>Monell</u>, 436 U.S. at 659, 691–95, unless the state actor was directly involved in the alleged violations of the Plaintiff's constitutional rights, <u>Colvin</u>, 605 F.3d at 292. For vicarious liability to attach here with respect to the Plaintiff's medical treatment, Parker must have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [party]." <u>Colvin</u>, 605 F.3d at 292 (citation omitted). However, because the complaint fails to allege any direct involvement by Parker, or that Parker acted pursuant to a policy or custom that violated the Plaintiff's constitutional rights, Parker is not liable to the Plaintiff under the doctrine of respondeat superior regardless of what Parker's employees may or may not have done. Thus, the Court will dismiss any Eighth Amendment claims against Parker for failure to state claims upon which relief can be granted.

### 3. Cruel and unusual punishment claims

The complaint alleges that, from June 2016 to November 2016, at TTCC, the Plaintiff "was forced to live" in unconstitutional conditions created by another inmate (Doc. 1 at 31-32); that, in segregation at TTCC on March 16, 2017, the Plaintiff had no running water, lights, or functional emergency call button (Id. at 39); that, at SCCF, the Plaintiff is exposed to life threatening living conditions, specifically, "Toxic Black Mold" (Id. at 17); and that, at SCCF, inmates who ask for protective custody are given a "Refuse Cell Assignment" (RCA), and these inmates are provided no daily recreation, no daily showers, no law library access, no books from the library, no religious services, no television viewing, no jobs, are not allowed to eat in the cafeteria, and are not allowed full use of commissary. (Id. at 51-52).

The Constitution does not protect a prisoner from unpleasant prison experiences. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of confinement. Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2400, 69 L.Ed.2d 59 (1981). However, the Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. Grubbs v. Bradley, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984).

As to the Plaintiff's claim that he is not permitted to eat in the chow hall, the complaint fails to allege that the Plaintiff is not receiving meals or is receiving meals nutritionally insufficient to maintain his health. His claim concerns only the fact that he must dine in his cell. The Court finds

that this allegation, even if true, does not describe an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 486-87.

Next, the complaint alleges that the Plaintiff is not allowed to watch television. Simply stated, there is no constitutional right to television while incarcerated. <u>Rawls v. Sundquist</u>, 929 F. Supp.3d 284, 288-89 (M.D. Tenn. 1996)(citing <u>Dede v. Baker</u>, No. 93-2319, 1994 WL 198179, at *2 (6th Cir. May 18, 1994)).

The Sixth Circuit has concluded that deprivation of a shower and other personal hygiene items for a "brief span of time . . ., i.e., only six days" is not actionable conduct. <u>Richmond v. Settles</u>, No. 09-6285, 2011 WL 6005197, at *6 (6th Cir. Dec. 2, 2011)(citing <u>Siller v. Dean</u>, 204 F.3d 1341, (6th Cir. Feb. 1, 2000)). Here, the complaint does not allege that the Plaintiff is deprived of showers for a lengthy period of time, only that the Plaintiff is not permitted to shower every day while housed in the RCA pod. Therefore, the Plaintiff's claim based on his inability to take daily showers fails to state an Eighth Amendment claim upon which relief can be granted.

As a general matter, there is no constitutional right of access to a jail or prison commissary. <u>See Wolfe v. Alexander</u>, No. 3:11-cv-0751, 2014 WL 4897733, at *8 (M.D. Tenn. Sept. 30, 2014)(citing <u>Newell v. Ruth</u>, No. 1:11-cv-86, 2014 WL 4411045, at *9 (E.D. Tenn. Sept. 8, 2014)("[C]ommissary access is a privilege, not a right.")). The Court finds that the Plaintiff's conditions of confinement claim premised on the lack of access to the prison commissary fails to state an Eighth Amendment claim upon which relief can be granted.[5]

The complaint alleges that inmates housed in the Plaintiff's pod are not permitted to hold prison jobs. Prisoners have no constitutional right to a particular job, or to any job at all for that

---

[5]The complaint alleges that the Plaintiff's denial of access to commissary was in retaliation for his exercise of a constitutionally protected right. These allegations are dealt with herein as Section 1983 retaliation claims.

matter.  See Rhodes v. Chapman, 452 U.S. 337, 348 (1981); Bishop v. Wood, 426 U.S. 341 (1976); Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir.1987).  Rather, prison administrators may assign inmates jobs and wages at their discretion.  Miller v. Campbell, 108 F. Supp.2d 960, 967 (W.D. Tenn. 2000).   Because the Plaintiff does not have a constitutional right to any job at all while incarcerated, this allegation fails to state a claim upon which relief can be granted.

The complaint also alleges that inmates housed in the RCA pod are not afford daily recreation privileges.  The amount of exercise that an prisoner is provided need only comport to the "'minimal civilized measure of life's necessities.'"  Walker v. Mintzes, 771 F.2d 920, 927 (6th Cir. 1985) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).   A total denial of recreational opportunities may violate the Constitution.  See Walker, 771 F.2d at 927-28.   Although the Sixth Circuit has not defined a minimum standard for recreation for adult prisoners, in its opinion in Rodgers v. Jabe, 43 F.3d 1082, 1087-1088 (6th Cir. 1995), the Court strongly suggests that five hours a week is the constitutional minimum.    Here, the complaint does not allege that the Plaintiff is denied all recreation, only that the Plaintiff is not afforded daily recreation.   The Court finds that, without more, the lack of daily recreation privileges is not sufficiently serious to constitute an actionable violation of Section 1983. Sandin, 515 U.S. at 486-87.

Further, although the pro se complaint alleges that the conditions of confinement described by the complaint as set forth above constitute cruel and unusual punishment in violation of the Eighth Amendment, the Plaintiff has not claimed any injury or harm as a result of the alleged conditions, including the alleged exposure to toxic black mold.  Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim.  See Moore v. Merchant, No.

5:13CV-P81-R, 2013 WL 6590395, at *4 (W.D. Ky. Dec. 16, 2013)(finding that, "[i]n any event, Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'"). Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F. 2d 950, 954 (6th Cir. 1987). The Sixth Circuit has held that, without a showing that basic human needs were not met, the denial of privileges as a result of segregation cannot establish an Eighth Amendment violation. See Evans v. Vinson, 427 Fed.Appx. 437, 443 (6th Cir. 2011); Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008). Consequently, the Court finds that the complaint fails to states colorable Eighth Amendment claims based on the allegations pertaining to the conditions of the Plaintiff's confinement.[6] These claims will be dismissed.

However, as to the claims that the Plaintiff is not permitted to attend any religious services while housed in SCCF's RCA pod, prisoners have a First Amendment right to practice their religious beliefs. Hudson v. Palmer, 468 U.S. 517, 523, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984). Prisoners must be provided "reasonable opportunities" to practice their religion. Id. Therefore, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests. Bell v. Wolfish,

---

[6]In any event, the Plaintiff's allegations pertaining to events that occurred prior to January 10, 2017, are barred by the statute of limitations for Section 1983 actions. The statute of limitations for a Section 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claims arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for Section 1983 actions arising in Tennessee is the one-year limitations provisions found in Tennessee Code Annotated § 28-3-104(a). Porter v. Brown, 289 Fed. Appx. 114, 116 (6th Cir. 2008). The complaint was filed on January 11, 2018.

441 U.S. 520, 549-51, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979)(limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate the First Amendment rights of inmates); Pollack v. Marshall, 845 F.2d 656, 658-60 (6th Cir.1988) (plaintiff who challenged regulation limiting the length of prisoners' hair did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with the hair length regulation failed to state a constitutional violation).

The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs, nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate; the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 405, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L.Ed.2d 459 (1989).

The Plaintiff claims that, while housed in SCCF since May 22, 2017, he has not been permitted to attend **any** religious services. The burden is on the Plaintiff to demonstrate that the right to practice his religion was denied. However, the complaint does not explain how, without the ability to attend religious services, the Plaintiff has an alternative means of exercising his religion. For example, the complaint does not allege that the Plaintiff may schedule appointments for individual visits with religious ministers or that Bibles or religious texts are available to inmates who request them. Based upon the Plaintiff's allegations, which the Court must accept as true for purposes of PLRA screening, the Court concludes that these allegations are sufficient to state a non-

frivolous First Amendment claim for purposes of the required PLRA screening. The complaint identifies Defendants Core Civic/CCA and TDOC as playing some role in the policy-based denial of the Plaintiff's First Amendment rights. (Doc. No. 1 at 52).

### 4.    Taking of property/due process claims

The complaint alleges that TTCC Defendants Jenkins and Payne confiscated the Plaintiff's commissary in the amount of $5.04 "for their own personal use and gain" (Doc. No. 1 at 33); that, when the Plaintiff arrived at SCCF on May 22, 2017, he brought with him one bag of arts and crafts, which was taken from the Plaintiff and has never been returned (Id. at 48); that, on May 25-26, 2017, Defendant Wesson took the Plaintiff's tennis shoes and slip-in insoles (Id.); and, that on June 9, 2017, Defendant Otjens confiscated the Plaintiff's legal materials pertaining to the Plaintiff's post-trial proceedings. (Id. at 48-49).

The complaint alleges that these Defendants' behavior constitutes unlawful deprivations of the Plaintiff's property under Section 1983. The Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers. However, the Supreme Court has held that, where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled on other grounds, Daniel v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Because the Plaintiff's claims are premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. See Copeland v. Machulis, 57 F.3d 476, 479-80 (6th Cir. 1995). Under settled Sixth Circuit law, a prisoner's

failure to sustain this burden requires dismissal of his Section 1983 due process action. See Brooks v. Dutton, 751 F.2d 197 (6th Cir. 1985). Here, however, the Plaintiff has not sustained his burden. State post-deprivation remedies are available to him. The Sixth Circuit Court of Appeals has held that Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either negligently or intentionally converted. Id. at 199. The Plaintiff has not alleged that he attempted post-deprivation remedies and that they were inadequate. The complaint only alleges that the Plaintiff brought the items to the attention of several officers and filed written grievances regarding the matter to facility officials. Thus, because there appear to be adequate state post-deprivation remedies available to the Plaintiff, his Due Process claims will be dismissed.

### 5.      Conspiracy claims under 18 U.S.C. § 241

The complaint alleges that a number of the Defendants conspired to deprive the Plaintiff of his constitutional rights in violation of 18 U.S.C. § 241. (Doc. No. 1 at 32). However, the Plaintiff lacks standing to raise claims under Section 241 because it is a criminal statute that does not create a private right of action. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Beverly v. Beverly, No. 17-3919, 2018 WL 1176508, at *1 (6th Cir. Jan. 30, 2018)(citing Linda R.S.). Therefore, the Plaintiff's claims brought pursuant to Section 241 must be dismissed.

### 6.      Disciplinary hearing claims

The complaint alleges that the Plaintiff was deprived of a fair and impartial disciplinary hearing in March 2017 at TTCC (Doc. No. 1 at 39-40); that TTCC Defendant Gardner did not allow the Plaintiff "to have or call witnesses or submit evidence" in his favor during his disciplinary hearing (Id. at 39); that TTCC Defendant Garner allowed Defendant Jenkins to interrupt while the

Plaintiff was presenting his defense (Id.); and that Defendant Walton "fail[ed] to provide Plaintiff competent effective assistance of counsel" during the Plaintiff's disciplinary hearing because, among other complaints, he failed to offer evidence and make objections. (Id. at 40).

"[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)(citing Morrissey v. Brewer, 408 U.S. at 411, 480, 92 S. Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. See Cleavinger v. Saxner, 474 U.S. 193, 106 S. Ct. 496, 88 L.Ed.2d 507 (1985) (disciplinary board members protected by qualified immunity); Superintendent v. Hill, 472 U.S. 445, 455–56, 105 S. Ct. 2768, 2773–75, 86 L.Ed.2d 356 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager); Ponte v. Real, 471 U.S. 491, 495–99, 105 S. Ct. 2192, 2195–97, 85 L.Ed.2d 553 (1985) (disciplinary board need not make contemporaneous record of reasons live witnesses for inmate not allowed); Baxter v. Palmigiano, 425 U.S. 308, 319–323, 96 S. Ct. 1551, 1558–60, 47 L.Ed.2d 810 (1976) (disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); Wolff, 418 U.S. 539, 564–71, 94 S. Ct. 2963, 2978–82 (defining scope of due process application to prison disciplinary hearings); Wolfel v. Morris, 972 F.2d 712 (6th Cir.1992); Hensley v. Wilson, 850 F.2d 269 (6th Cir.1988); Hudson v. Edmonson, 848 F.2d 682 (6th Cir.1988); Turney v. Scroggy, 831 F.2d 135 (6th Cir.1987).

Regarding the Plaintiff's claim that he was denied the effective assistance of counsel, an inmate has no right to assistance of counsel at a disciplinary hearing and therefore has no right to effective advice or assistance during that process. See Wolff, 418 U.S. at 569-70; Harrison v. Seay,

856 F. Supp. 1275, 1281. (W.D. Tenn. 1994). Thus, the Plaintiff's claims against Defendant Walton must be dismissed for failure to state a claim upon which relief may be granted.

To the extent that the complaint alleges that Defendants did not comply with prison regulations in conducting the Plaintiff's disciplinary hearing, "mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause." Rimmer-Bey, 62 F.3d at 790-71. Likewise, to the extent that the Plaintiff asserts that any Defendant violated his rights by failing to investigate his assertions of factual innocence, the Plaintiff has not stated a cognizable claim. Absent evidence that a prison official "directly participated in, encouraged, authorized[,] or acquiesced" in the unconstitutional acts, a prison official who denies an administrative grievance or fails to intervene on the inmate's behalf cannot be liable under § 1983 as a matter of law. Shehee v. Luttrell, 199 F.3d 295, 200 (6th Cir. 1999).

Finally, while the complaint alleges that the Plaintiff was not permitted "to have and to call witnesses" on his behalf (Doc. No. 1 at 40), in the Plaintiff's disciplinary report appeal, the Plaintiff writes that "The DHO did not acknowledge any of Vick's witnesses." (Id. at 199). Therefore, it appears that the Plaintiff was permitted to have witnesses on his behalf present during the hearing even if the disciplinary hearing officer did not elicit testimony from any of the witnesses. Nevertheless, even if the Plaintiff was not permitted to call witnesses, the complaint does not allege that the Plaintiff lost any sentence reduction credits as a result of the disciplinary conviction; therefore, he did not have a constitutionally protected liberty interest that would trigger Wolff's due process protections. See, e.g., Sandin v. Conner, 515 U.S. 472, 484, 486-87 (1995). The Plaintiff's Section 1983 claims based on his disciplinary hearing therefore must be dismissed for failure to state claims upon which relief may be granted.

### 7. Retaliation claims

The complaint alleges the following acts of retaliation by named Defendants against the Plaintiff: in retaliation for filing a grievance about the conditions of his confinement, Defendants Jenkins and Payne made up false disciplinary charges against the Plaintiff and took his commissary money "for their own personal use and gain" (Doc. No. 1 at 33); in retaliation for the Plaintiff having made a joke about them to Warden Liebach, on February 28, 2017, Peterson and Jenkins made up a second false disciplinary report about the Plaintiff (Id. at 35); in retaliation for the Plaintiff having filed a grievance and making a joke about the Defendants to Warden Liebach, on March 16, 2017, TTCC Defendants Jenkins, Peterson, Payne, Garner, McVay, Price, Cole, and Otjens ordered the Plaintiff to segregation for ten days and took his personal property including his KOP medication and legal mail[7] and refused to return the items until May 22, 2017 (Id. at 36-38); "as punishment for not signing a blank Medical Refusal Form," on October 22, 2017, Defendants B. Keeton and G. Keeton placed the Plaintiff in segregation on a top bunk (although the Plaintiff has a medical assignment for bottom bunks only) and took the Plaintiff's therapeutic shoes (Id. at 46); in retaliation for requesting a medical refusal form, August 25, 2017, Defendant D. Harville placed the Plaintiff "in an area approximately 3'x3' in HSA without any fixtures or running water" for 70 minutes and then in another cell for several hours without any bedding or personal property after the Plaintiff took 18 units of insulin without being fed, which was dangerous to the Plaintiff's health (Id. at 46-47); in retaliation for complaining about the overcrowded waiting room and the long wait

---

[7]The complaint alleges that the Defendants took basic hygiene materials "which [are] also essential to keeping Plaintiff's diabetes and health under control to avoid future diabetes complications from not brushing teeth/dental care, showers, eye care products, foot care products and other prosthetic devices, issued by a physician or purchased by Plaintiff . . . .", one face towel, two bath towels, two pairs of socks, two pairs of boxer shorts, one pair of thermal underwear, two tee shirts, legal materials, and medication from the Plaintiff. (Doc. No. 1 at 36-37).

times to receive insulin, on August 20, 2017, Defendants Banks and White "began making threats to Plaintiff and other diabetics" that they would be placed in segregation (Id. at 44); on September 20, 2017, Defendants Lineberry opened the Plaintiff's legal mail and told the Plaintiff, "You're a regular little Johnny Cochran" and he and S. Peeler took the Plaintiff's typing paper and legal envelopes and told the Plaintiff that he could buy these items from commissary instead (Id. at 47-48); and Defendants Lineberry, Gonzales, Pevahouse "are punishing the Plaintiff" for complaining about the Defendants reading the Plaintiff's legal mail. (Id. at 47).

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X, 175 F.3d at 388 . To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. Id. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than de minimis harm resulting from it. See Ingraham v. Wright, 430 U.S. 651, 674 (1977); Thaddeus-X, 175 F.3d at 396.

The Court finds that the claims against these Defendants survive the PLRA screening and warrant further factual development. Therefore, the Plaintiff's First Amendment retaliation claims shall proceed against TTCC Defendants Jenkins, Payne, Peterson, Garner, McVay, Price, Cole, and Otjens and SCCF Defendants B. Keeton, G. Keeton, Harville, Banks, White, Peeler, Lineberry, Pevahouse, and Gonzales in their individual capacities.

### 8.    Access to court claims

The complaint alleges that, in 2010, Defendant Parker, Commissioner of TDOC, issued a "fiat" to wardens "to confiscate inmates['] 'excessive' legal privilege[d] mail and store these items for the inmates' viewing upon submitting an inmate request form."  (Doc. No. 1 at 41).  According to the complaint, when the Plaintiff was allowed to review his stored "excessive legal privilege[d] mail," he was locked in a cell without the aid of counsel or a legal aid to assist and "without legal equipment (i.e., typewriter, legal books) . . . ."  (Id. at 42).  Furthermore, while housed at TTCC from February 3, 2016 to May 22, 2017, the Plaintiff had no access to the stored mail, despite his many requests to view his mail.  (Id.)    The complaint also alleges that TTCC Defendants Jenkins, Peterson, Payne, McVay, Price, Otjens, Garner, and Cole confiscated the Plaintiff's privileged legal mail, legal material, and court documents and kept those from the Plaintiff for a period of two months.  (Id. at 37)  and, that on June 9, 2017, Defendant Otjens confiscated the Plaintiff's legal materials pertaining to the Plaintiff's post-trial proceedings.  (Id. at 48-49).  The complaint alleges that the Plaintiff's ability "to effective prepare an adequate post-conviction petition" was "hindered and impaired" by the Defendants' confiscation of the Plaintiff's legal papers.  (Id. at 42).  The complaint further alleges that the two of the Plaintiff's lawsuits were dismissed for failure to prosecute during this time.  (Id.)  The Plaintiff challenges the "fiat" on its face and as applied to the Plaintiff.   In addition, the complaint also alleges that inmates housed in the SCCF RCA pod have no access to a law library.

The Plaintiff is correct in asserting that prisoners have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L.Ed.2d 606 (1996).  An inmate who is claiming he was denied access to court, however, must "demonstrate that the alleged shortcomings

in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. at 351. To demonstrate the lack of access has hindered his efforts to pursue a legal claim, an inmate must establish the prison official impeded his pursuit of a non-frivolous post-conviction or civil rights action, i.e., a denial or dismissal of a direct appeal, habeas petition, or civil rights case seeking to vindicate basic constitutional rights. Lewis, 518 U.S. at 348–354.

The Plaintiff's allegation that he has been denied access to a law library while housed in the RCA pod lacks sufficient specificity to give rise to a constitutional deprivation. The Plaintiff has failed to allege any prejudice to this litigation, a direct appeal, a habeas petition, or any other civil rights action under 42 U.S.C. § 1983 to "vindicate basic constitutional rights." Lewis, 518 U.S. at 354; Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir.1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation"). Therefore, the Plaintiff has failed to demonstrate a constitutional violation. Accordingly, the Plaintiff's claim that he was not provided with adequate access to a law library while housed in the RCA pod at SCCF will be dismissed for failure to state a claim upon which relief may be granted.

However, with respect to the confiscation and storage of the Plaintiff's "excessive" legal materials pursuant to the TDOC "fiat," the Plaintiff alleges that TTCC Defendants Jenkins, Peterson, Payne, McVay, Price, Otjens, Garner, and Cole  confiscated and withheld the Plaintiff's legal documents and that their actions prejudiced the Plaintiff in at least two pending court actions which were dismissed for failure to prosecute. Consequently, the Court finds that the Plaintiff's allegations state a colorable claim for denial of access to the courts under the First Amendment to the United States Constitution against TTCC Defendants Jenkins, Peterson, Payne, McVay, Price, Otjens, Garner, and Cole in their individual capacities. Because the complaint alleges that these Defendants

acted according to TDOC policy, claims against Defendant Parker (who is alleged to have created the policy) in his individual capacity and against TDOC also survive the PLRA screening.

## IV. Conclusion

Having determined that the Plaintiff, who is a three striker under the PLRA, has satisfied the exception to the three strikes rule and has demonstrated that he lacks sufficient financial resourcest to pay the filing fee upon the filing of his complaint, the Court will permit the Plaintiff to proceed in forma pauperis in this action.

The Court has reviewed the complaint pursuant to the PLRA and finds that the complaint states the following actionable claims under Section 1983: Eighth Amendment deliberate indifference to the Plaintiff's serious medical needs claims against SCCF nurse practitioner Kelley and nurse Clenny in their individual capacities based on the inadequacy of the Plaintiff's medical treatment; Eighth Amendment deliberate indifference to the Plaintiff's serious medical needs claims against TDOC, CCA/Core Civic, Hinninger, Liebach, Lindamood, Wardlow, Pittman, Dodd, and Peeler based on the policy of putting the financial well-being of Core Civic and its shareholders above inmate medical care; Eighth Amendment deliberate indifference to the Plaintiff's serious medical needs claims against SCCF Defendants J. Garner, Westray, Banks, and White and TTCC Defendants Jenkins, Peterson, Payne, McVay, Price, Otjens, Cole, and J. Garner in their individual capacities based on their actions or personal involvement in decisions affecting the Plaintiff's medical treatment and well-being; First Amendment claims against CCA/Core Civic and TDOC based on the inability of inmates in the RCA pod to attend religious services or otherwise exercise their religion; First Amendment claims against TTCC Defendants Jenkins, Payne, Peterson, J. Garner, McVay, Price, Cole, and Otjens in their individual capacities and SCCF Defendants B.

Keeton, G. Keeton, Harville, Banks, White, Peeler, Lineberry, Pevahouse, and Gonzales in their individual capacities based on their retaliatory acts; and First Amendment claims against TDOC, Tony Parker, and TTCC Defendants Jenkins, Peterson, Payne, McVay, Price, Otjens, Cole, and J. Garner in their individual capacities based on their role in the Plaintiff's denial of access to court. 28 U.S.C. § 1915A. These claims shall proceed for further development of the record.

However, the complaint fails to state claims upon which relief can be granted as to all other claims against all other Defendants. Therefore, those claims and Defendants Compton, Walton, Cox, Brum, Thurman, Veal, Dethrow, Bumphus, Wesson, Staggs, Harris, and Nava will be dismissed.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE